**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JESSICA LYNNE DAVIS,<br><br>      Plaintiff,<br><br>  v.<br><br>FOUNDATION TITLE LLC *et al.*,<br><br>      Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 25-17024 (KMW-EAP)<br><br>**OPINION** |

**Appearances:**

**Jessica Lynne Davis**
30 North 2nd Street
Pleasantville, NJ 08232

*Pro se Plaintiff*

**Michael O'Donnell, Esq.**
**Jonathan Barrera, Esq.**
Riker Danzig LLP
One Speedwell Avenue
Morristown, NJ 07962

*Counsel for Defendant Foundation Title LLC*

**Hugh A. Keffer, Esq.**
Fidelity National Law Group
103 Eisenhower Parkway, Suite 213
Roseland, NJ 07068

*Counsel for Defendant Fidelity National Title Insurance Company*

**David B. Grantz, Esq.**
**Matthew Patrick Dolan, Esq.**
Meyner & Landis
One Gateway Center, Suite 2500
Newark, NJ 07102

*Counsel for Defendant FDIC*

**Walter Buzzetta, Esq.**
Stradley Ronon Stevens & Young
457 Haddonfield Rd, Suite 100
Cherry Hill, NJ 08002

*Counsel for Defendants Cenlar FSB & New Jersey Housing & Mortgage Finance Agency*

**Christian M. Scheuerman, Esq.**
**Lucas Klirsfeld, Esq.**
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
535 Route 38 East, Suite 501
Cherry Hill, NJ 08002

*Counsel for Defendant Keller Williams Jersey Shore*

**Jennifer Broeck Barr, Esq.**
**Russell L. Lichtenstein, Esq.**
Cooper, Levenson, PA
1125 Atlantic Avenue, Third Floor
Atlantic City, NJ 08401

*Counsel for Defendant Balsley Losco Realty*

**Eric Phillip LeBoeuf, Esq.**
LeBoeuf Law LLC
830B Radio Road
Little Egg Harbor, NJ 08087

*Counsel for Defendant Foundation Title LLC*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

*Pro se* Plaintiff Jessica Lynne Davis ("Plaintiff") brings this action against Defendants Foundation Title LLC ("Foundation Title"), Fidelity National Title Insurance Company ("Fidelity"), FDIC *in its capacity as Receiver for Republic First Bank* ("FDIC"), Cenlar FSB ("Cenlar"), New Jersey Housing and Mortgage Finance Agency ("NJHMFA"), Keller Williams Jersey Shore ("KW"), Balsley Losco Realty ("Balsley"), and Volkmann Management LLC ("Volkmann") (collectively "Defendants"). This matter comes before the Court on Plaintiff's Motion to Vacate the Court's previous Orders in Case No. 24-cv-11409 (ECF No. 22) and a Motion

2

for Supplemental Relief (ECF No. 29). Defendants FDIC, Cenlar, NJHMFA, KW, and Fidelity opposed both motions (ECF Nos. 31, 32, 41, 51, 52, and 53). Separately, Defendants filed Motions to Dismiss (ECF Nos. 27, 44, 45, 46, 47, 49, & 72). Plaintiff opposed all motions (ECF No. 54 & 74), to which Defendants replied (ECF Nos. 55, 56, 57, 58, 59, & 75). For the reasons articulated below, Plaintiff's Motions (ECF Nos. 22 & 29) are **DENIED**. Defendant FDIC's Motions to Dismiss (ECF No. 49) is **GRANTED** and the case is **REMANDED** to the Superior Court of New Jersey. All remaining pending motions (ECF Nos. 27, 44, 45, 46, 47, and 72) are **DENIED AS MOOT**.

## II.   BACKGROUND

### A.   Plaintiff's Motions

In her Motions, Plaintiff asks the Court to revisit and unwind the procedural history of this case ("Davis II") as well as Case No. 24-cv-11409 ("Davis I"). Specifically, Plaintiff asks the Court to:

1)   vacate two orders the Court entered in Davis I;
2)   declare that federal jurisdiction existed based on the FDIC administrative claim process at the time Davis I was remanded;
3)   consolidate the related federal actions;
4)   stay all proceedings pending resolution of jurisdictional issues and her appeal;
5)   permit amendment of her pleadings;
6)   estop Defendants from asserting service-related defenses;
7)   order expedited discovery concerning alleged spoliation, coordination, and conflicts of interest;
8)   require Defendant FDIC and other parties to show cause why sanctions or disqualification should not be imposed;
9)   declare that Defendant FDIC's October 2025 removal was untimely;
10)   declare certain state-court orders void;
11)   preserve the status quo pending appellate review.

To resolve Plaintiff's motion, the Court must engage in an analysis of what can only be described as the tortured procedural history of not only this case, but also of Davis I.[1] Both cases arise out of the same underlying state court action, which Plaintiff filed in the Superior Court of New Jersey on March 5, 2024 ("underlying action"). In the underlying action, Plaintiff asserted several claims, including violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (*See* Davis I, ECF No. 11[2] at p. 3).

### i. Davis I

On April 26, 2024, after Plaintiff filed the underlying action, the Pennsylvania Department of Banking and Securities closed Republic First Bank and appointed Defendant FDIC as Receiver to wind up the bank's affairs pursuant to 12 U.S.C. § 1821(d)(2)(A)(i). (*Id.*) Defendant FDIC contends that Plaintiff never properly served Republic First Bank in the underlying action and, therefore, at the time it was appointed Receiver, Defendant FDIC was not aware of the underlying action or that Plaintiff was a potential claimant. (*Id.*)

According to the state court docket for *Davis v. Foundation Title*, No. ATL L 000561-24, by August 3, 2024, a Lack of Prosecution Dismissal Warning was issued. (*Id.*) The Lack of Prosecution Dismissal Warning stated that on October 1, 2024, the court would dismiss the matter due to lack of prosecution without prejudice pursuant to Rule 1:13-7 or Rule 4:43-2 unless action required under the rules was taken. (*Id.* at pp. 3-4). On October 4, 2024, Plaintiff filed an Amended Complaint, but on that same date, the court issued an order dismissing the case due to lack of

---

[1] The Court remanded Davis I to the Superior Court of New Jersey, and in doing so provided in its Opinion a thorough procedural history. (Davis I, ECF No. 11 at pp. 3-5). The Court would normally incorporate the procedural history by reference. However, given the Plaintiff's *pro se* status and her requested relief, a full recitation of the procedural history underlying both Davis I and Davis II allows the Court to provide clarity to the parties regarding its analysis. Accordingly, the Court will fully incorporate the previously recited procedural history of Davis I alongside the procedural history of Davis II. For ease of reference, the Court will cite to its Opinion in Davis I (Davis I, ECF No. 11) instead of the record citations that were cited in the Davis I Opinion.

[2] Remand Opinion (Davis I, ECF No. 11).

prosecution.[3] (*Id*. at p 4).  The dismissal order states, "[i]t is hereby ordered that under Rules 1:13-7 or 4:43-2, the above matter has been dismissed without prejudice for lack of prosecution. This Order closes [the] file. . . . A formal notice of motion is now required to restore this case to an active trial status." (*Id*.) On October 24, 2024, Plaintiff filed a Motion to Reinstate the Case.  (*Id*.)

On December 4, 2024, the court issued a Case Management Conference Order, which ordered, among other things, that Plaintiff's Motion to Reinstate was to be "carried" until January 17, 2025.  (*Id*.)  On December 23, 2024, Defendant FDIC filed its notice of appearance and subsequently filed a Notice of Removal to this Court on the basis of the Financial Institution Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1819, *et seq*. ("FIRREA"), which provides that the FDIC may remove any action from a state court to the appropriate federal district court within 90 days of the action being filed or when the FDIC is substituted as a party.  (*Id*.)

On December 24, 2024, Defendant FDIC filed a Motion to Stay Judicial Proceedings in Davis I. (*Id*.)  Thereafter, on January 10, 2025, Defendant KW filed a Motion in Opposition to Defendant FDIC's Motion to Stay, asserting that the matter was improperly removed from state court. (*Id*. at pp. 4-5). On January 2, 2025, while Davis I was pending, Plaintiff submitted an administrative claim to the FDIC as Receiver, which was subsequently denied on June 16, 2025, for being untimely filed.

On July 9, 2025, this Court remanded Davis I to the Superior Court of New Jersey ("Davis I Remand Order"), explaining that the case had been improperly removed because at the time of removal the Superior Court had not reinstated the case. (*Id*. at pp. 7-8). Since "[n]on-reinstated state court cases may not be removed to federal court," the Court determined that the case "had no existing 'case or controversy' at the time removal" and that the Court could not "exercise subject

---

[3] The Court notes that the entry on the record for the order of dismissal is October 5, 2024, however the order itself is dated October 4, 2024.  *See id*. at LCV20242568520.

matter jurisdiction over the case." (*Id*. at pp. 8). Accordingly, the Court remanded the case to the Superior Court for lack of subject matter jurisdiction[4] and denied as moot Defendant FDIC's motion to stay. (*Id*.)

On August 15, 2025, Plaintiff filed a Motion to Reopen ("Davis I Motion to Reopen") (Davis I, ECF No. 15), which various Defendants opposed (Davis I, ECF Nos. 16, 17, & 18). Thereafter, Plaintiff filed a reply as well as a "Supplemental Motion." (Davis I, ECF Nos. 19 & 22.) On October 28, 2025,[5] the Court denied Plaintiff's motion to reopen as moot, explaining that once a case has been remanded, the Court no longer has authority to hear subsequent motions, and such motions must be denied as moot. (*See* Davis I, ECF No. 27). The Court did not reach the merits of Plaintiff's arguments concerning the FDIC administrative claim denial.

On November 17, 2025, Plaintiff appealed the Davis I Remand Order as well as the Davis I Motion to Reopen Denial. (*See* Davis I, ECF Nos. 31 & 32). On May 20, 2026, the Third Circuit dismissed Plaintiff's appeal, explaining that it lacked appellate jurisdiction over those matters. (*See* Davis I, ECF No. 35). On July 20, 2026, the Third Circuit declined Plaintiff's petition for rehearing by the Court *en banc*. (*See* ECF No. 76).

### ii.    Davis II

Meanwhile, on October 10, 2025, following the remand of Davis I, the Honorable James H. Pickering, J.S.C., held oral argument in the underlying action. (ECF No. 1-6 at p. 1).[6] On October 14, 2025, Judge Pickering entered an order that formally reinstated the case in the Superior Court of New Jersey, officially substituted the FDIC-Receiver for Republic Bank as a party in the

---

[4] Since the Court remanded based on a jurisdictional defect rather than a discretionary right not to exercise supplemental jurisdiction, remand was pursuant to 28 U.S.C. § 1447(c).

[5] The Court notes that the docket reflects that the Court's Order (ECF No. 27) was uploaded to the docket on October 29, 2025, the Order is dated October 28, 2025.

[6] Def.'s Notice of Removal, Ex. F at p. 1 (ECF No. 1-6 at p. 1)

case effective October 10, 2025, [7] and granted Plaintiff's Motion for Leave to File an Amended Complaint. (*Id*.)  On October 29, 2025, Defendant FDIC removed the case to this Court based on its statutory right under FIRREA.[8] (*Id*. at ¶ 24).

On November 17, 2025, Plaintiff filed a "Motion to Vacate Remand and Denial Orders" (ECF No. 22). One week later, Plaintiff filed a "Motion for Amended Supplemental Filing to Emergency Motion" (ECF No. 29). In her Supplemental Motion (ECF No. 29), Plaintiff characterized her initial motion as one for emergent relief and sought additional relief pursuant to the Fed. R. App. P. 8.  In those motions, Plaintiff asked the Court to vacate the Davis I Remand Order and Davis I Motion to Reopen denial, declare that federal jurisdiction existed at the time of remand, and grant various forms of ancillary relief. Defendants opposed both motions (ECF Nos. 31, 32, 41, 51, 52, and 53). Plaintiff did not reply to Defendants' oppositions.

After removal of the case, all Defendants filed motions to dismiss. (ECF Nos. 27, 44, 45, 46, 47, 49, & 72.) Plaintiff opposed all motions (ECF Nos. 54 & 74), and Defendants replied (ECF Nos. 55, 56, 57, 58, 59, & 75). The Court has considered all of the parties' submissions as to all pending motions and finds oral argument unnecessary. As such, all motions pending before the Court are ripe for decision.

### B.    Defendant FDIC's Motion to Dismiss

On April 26, 2024, the Secretary for the Department of Bank Securities took possession of Republic First Bank because it had "an impairment of capital below the minimum required by law"

---

[7] Judge Pickering's Order explicitly stated that Defendant FDIC was substituted as a party on October 10, 2025. Pursuant to 12 U.S.C. § 1819(b)(2)(B), Defendant FDIC must remove the case to federal court within ninety (90) days of it being substituted as a party. Accordingly, Defendant FDIC had until January 8, 2026, to timely remove the case to federal court. Therefore, it's removal on October 29, 2025, was timely.

[8] As Defendant FDIC removed the case to federal court within ninety (90) days of being formally substituted as a party in the case, the Court finds that the case was timely removed.

and was "in an unsafe and unsound condition to transact its business." (ECF No. 49-3[9] at p. 1, 3.) At that time, the Secretary designated Defendant FDIC as the Receiver for Republic First Bank (*Id*. at p. 5.) Defendant FDIC accepted the designation of receivership on the same day. (*Id*. at p. 6.)

Pursuant to FIRREA, on May 4, 2024, Defendant FDIC published a notice of receivership in The Star Ledger, The New York Times, The Philadelphia Inquirer, and The Times. (*See* ECF No. 49-4[10] at pp. 1-4). The notice, titled "Publication Notice to Creditors and Depositors of Republic First Bank DBA Republic Bank Philadelphia, PA," stated that all creditors with a claim against the failed institution must submit their claim "**on or before August 15, 2024 (the 'Claims Bar Date').**" (*See id*.) (emphasis in original). The published notice provided instructions on how to submit a claim, identified the FDIC as the receiver, and stated, "**Under federal law 12 U.S.C. Section 1821(d)(5)(C), failure to file a claim on or before the Claims Bar Date will result in the Receiver disallowing the claim. The disallowance is final.**" (*See id*.) (emphasis in original). On June 4, 2024, and July 2, 2024, Defendant FDIC published the same notice in The Star Ledger, The New York Times, The Philadelphia Inquirer, and The Times. (*See* ECF No. 49-5; ECF No. 49-6).

Defendant FDIC contends that because Plaintiff allegedly failed to properly serve Republic Bank by the time it was appointed receiver, Plaintiff was not identified as a potential creditor on Republic Bank's books. (ECF No. 49-1 at p. 10). Defendant FDIC first "discovered" Plaintiff's status as a potential claimant on November 12, 2024, after Plaintiff mailed a copy of the Amended Complaint to Fulton Bank. (*Id*.) On November 15, 2024, Defendant FDIC mailed Plaintiff a

---

[9] Def. FDIC's Br., Ex. 1 (ECF No. 49-3)
[10] Def. FDIC's Br., Ex. 2 (ECF No. 49-4 at pp. 1-4)

"Notice of Discovered Claimant," which advised Plaintiff that any claims against Republic Bank must be filed with the FDIC by the Claims Bar Date of August 15, 2024. Because the notice was sent to Plaintiff after the Claims Bar Date had passed, the notice also advised that in addition to the Proof of Claim form and supporting documentation, Plaintiff must "prove that [she] lacked knowledge of the appointment of the Receiver" by February 13, 2025. (ECF No. 49-7 at p. 2).

On January 2, 2025, Plaintiff submitted an administrative claim to the FDIC, which she supplemented multiple times through March 26, 2025. (ECF No. 49-1 at p. 11.) On June 16, 2025, Defendant FDIC mailed Plaintiff a "Notice of Disallowance of Claim." (ECF No. 49-2 at ¶ 9; ECF No. 49-12 at pp 1-2). The disallowance notice advised Plaintiff that her claim was disallowed as untimely under 12 U.S.C. § 1821(d)(5)(C)(i), which was a final determination. (*Id*. at p. 1).

## C.    STANDARD OF REVIEW

**Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)**

When considering a Rule 12(b)(1) motion, "[a] district court has to first determine ... whether [the] motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). As the Third Circuit has explained:

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present.

> Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.

*Id.* at 358 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

On the other hand, a factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Id.* Because a factual attack puts at issue the court's "very power to hear the case" the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This means that for the purpose of determining whether it has power to hear the case, the court may consider evidence outside of the pleadings. *Id.*

## D.   DISCUSSION

### A.   Plaintiff's Motions

Although Plaintiff seeks numerous forms of relief, resolution of those requests ultimately centers on whether Defendant FDIC's June 16, 2025, denial of her administrative claim provides a basis for vacating the Davis I Remand Order. Plaintiff contends that the FDIC's claim denial constituted a significant jurisdictional event under FIRREA which materially altered the jurisdictional posture of the case and should have been considered before Davis I was remanded. Plaintiff's present motions are premised largely on her contention that the Court remanded Davis I without knowing about or considering the effect of the June 16, 2025, FDIC denial. Defendants contend that the denial was irrelevant to the Davis I Remand Order because the Court remanded the case for lack of subject matter jurisdiction, which would not have been altered by the June 16, 2025, denial.

For the same reason the Court denied Plaintiff's Davis I Motion to Reopen as moot because it lacked authority to adjudicate, alter, or vacate any motions filed after the case was remanded (*see* Davis I, ECF No. 27), the Court cannot revisit and vacate the Davis I Remand Order. Indeed, 28 U.S.C. § 1447(d) permanently strips the Court of jurisdiction to revisit a prior remand. Section 1447(d) provides that a remand order "is not reviewable on appeal or otherwise." The Third Circuit has explained that when a case is remanded pursuant to § 1447(c), the district court permanently loses jurisdiction to reconsider, vacate, or modify the remand order once a certified copy of the remand order has been mailed to the state court. *Agostini v. Piper Aircraft Corp.*, 729 F.3d 350, 355-56 (3d Cir. 2013); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995) ("The general rule is that a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court.").

In Davis I, the docket clearly establishes that the Clerk mailed a certified copy of the Remand Order to the Atlantic County Superior Court on July 9, 2025. (*See* Davis I, ECF No. 13) ("Transmittal Letter for remanded case to Atlantic County Courthouse, 1201 Bacharach Boulevard, Atlantic City, NJ 08401 State No: ATL L 000561 24. *Mailed certified copy of the Order remanding case*…(Entered: 07/09/2025)") (emphasis added). Once the Clerk mailed a certified copy of the Davis I Remand Order to the Atlantic County Superior Court, "the mandate of § 1447(c) was fulfilled, triggering § 1447(d). At the moment of mailing—the jurisdictional event—the remand order became unreviewable on appeal or otherwise." *Agostini*, 729 F.3d at 356. Put simply, "[o]nce mailed, the order [could] not be reconsidered." *Id*. The same applies here. The Court does not have authority to review, reconsider, or vacate the Davis I Remand Order.[11]

---

[11] The Court notes that even if it had authority to reconsider and vacate the Davis I Remand Order, it would not. In its Remand Opinion, the Court explained that the case was improperly removed because at the time of removal the underlying state action had been dismissed and had not been formally reinstated. (Davis I, ECF No. 11 at pp. 7-8). As such, when Defendant FDIC removed the case, there was no live controversy so the Court could not hear the case.

11

Because the Court lacks authority to revisit the Davis I Remand Order, Plaintiff's remaining requests for relief predicated on the alleged impropriety of that remand necessarily fail as well. Plaintiff's requests to vacate the Davis I Motion to Reopen denial, declare that federal jurisdiction existed in Davis I, consolidate Davis I and Davis II, deem filings to relate back to August 15, 2025, and equitably toll any FIRREA deadline all depend on the premise that this Court may revisit the Davis I Remand Order. It may not. Therefore, those requests are denied. To the extent that Plaintiff's request to estop Defendants from asserting service-related defenses is premised upon the alleged impropriety of the Davis I Remand Order, that request is likewise denied.

Plaintiff also asks the Court to declare two Superior Court Orders void. However, under the *Rooker-Feldman* Doctrine, federal district courts possess only original jurisdiction, not appellate jurisdiction over state-court decisions. *See In re Adams*, 151 F.4th 144, 151-52 (3d Cir. 2025). Accordingly, a federal district court lacks jurisdiction to review and overturn a state court order. *Id*. Accordingly, the Court denies Plaintiff's request to declare the Superior Court Orders void.

Regarding Plaintiff's supplemental request for a stay or injunction pending appeal, the Third Circuit has denied Plaintiff's appeal for lack of appellate jurisdiction and has likewise denied Platiniff's petition to rehear the case *en banc*. Accordingly, there is no pending appeal for which the Court may preserve the status quo or grant injunctive relief, rendering Plaintiff's request moot.

---

*Smith v. Toyota Motor Sales, U.S.A. Corp.*, No. 06-2788, 2007 WL 1585157, at *3 (D.N.J. May 31, 2007). The June 16, 2025, administrative denial does not change that fact. The law is clear, if a state court case is dismissed and subsequently removed to federal district court prior to formal reinstatement, the district court must remand the case, even if there would have been jurisdiction had the case been properly removed. *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382, 42 S. Ct. 349, 351, 66 L. Ed. 671 (1922) ("If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."). As such, even if the June 16, 2025, administrative denial would have conferred jurisdiction, a fact that the Court does not decide at this time, it would not cure the defective removal and the Court would still have remanded the case to state court.

Finally, Plaintiff's requests for expedited discovery, sanctions, disqualification, and an order to show cause rest on conclusory allegations of concealment, spoliation, coordination, and conflicts of interest. Plaintiff has not identified evidence demonstrating fraud upon the Court, destruction of evidence, an actual conflict warranting disqualification, or other misconduct sufficient to justify sanctions or extraordinary discovery. As such, Plaintiffs requests are denied.

Accordingly, Plaintiff's Motions (ECF Nos. 22 & 29) are **DENIED** in their entirety.

### B.    Motions to Dismiss

#### 1.    Subject Matter Jurisdiction as to Defendant FDIC

Defendant FDIC moves to dismiss the Amended Complaint pursuant to Rule 12(b)(1), arguing that under 12 U.S.C. § 1821(d)(13)(D), Plaintiff's failure to timely submit a claim through the mandatory administrative claims process established by FIRREA deprives this Court of subject matter jurisdiction over Plaintiff's claims against it. (ECF No. 49 at pp. 14–16.) In her opposition, Plaintiff does not meaningfully address whether she satisfied FIRREA's administrative exhaustion requirements or whether Defendant FDIC erred in determining that her administrative claim was untimely. Instead, Plaintiff largely reiterates the same jurisdictional arguments asserted in her Motions discussed *supra*. Those arguments, however, do not address the jurisdictional issue presented by Defendant FDIC.

Congress enacted FIRREA with the intent to "restore public confidence in the savings and loan industry and to reorganize the insolvent Federal Savings and Loan Insurance Corporation." *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 62 (3d Cir. 1991), *as amended on denial of reh'g* (Nov. 13, 1991). In doing so, Congress included a "comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution." *Id*. Title 12 U.S.C. §§ 1821(d)(3)-(13) sets for the procedure for asserting a claim against a failed financial

13

institution. This procedure "authorizes the FDIC to 'determine,' and 'allow,' and 'disallow' claims." *Walker v. F.D.I.C.*, No. CIV. A. 08-6037 JAG, 2009 WL 5216980, at *2 (D.N.J. Dec. 29, 2009) (cleaned up). Section 1821(d)(13)(D) provides that, except as otherwise provided in § 1821(d), "no court shall have jurisdiction over" claims against a failed depository institution for which the FDIC has been appointed receiver unless the claimant has complied with FIRREA's mandatory administrative claims process.

As part of the administrative claims procedure, the FDIC must publish a notice of receivership that establishes a Claims Bar Date and explains the procedure for filing a claim. *Id*.; *see also* 12 U.S.C. § 1821(d)(3)(B)(i). Additionally, the FDIC must mail a similar notice to all creditors "appearing in [the failed financial institution's] books." *Id*. § 1821 (d)(3)(C)(i). Further, "upon discovery of the name and address of a claimant not appearing on the institution's books" the FDIC must mail a similar notice to the discovered claimant. *Id*. § 1821 (d)(3)(C)(ii).

Under 12 U.S.C. § 1821(d)(5)(C), the FDIC has authority to "make a final determination disallowing an untimely filed claim." *Walker*, 2009 WL 5216980 at *2. The FDIC may evaluate the merits of an untimely claim if the claimant establishes "to the satisfaction of the receiver" that:

> (I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the claims bar] date; and
>
> (II) such claim is filed in time to permit payment of such claim.

U.S.C. §§ 1821 (d)(5)(C)(ii)(I)-(II), (d)(5)(D)(i). Importantly, once the FDIC has disallowed an untimely claim, "such disallowance shall be final." *Id*. §§ 1821 (d)(5)(C)(i)-(ii).

In this case, Defendant FDIC published a notice of receivership in compliance with FIRREA three times in four different publications. (*See* ECF No. 49-4; ECF No. 49-5; ECF No. 49-6). Once Defendant FDIC first "discovered" Plaintiff's status as a potential claimant it mailed

14

her a "Notice of Discovered Claimant" within three days. (ECF No. 49-1 at p. 5.) The notice advised that since the Claims Bar Date had passed, Plaintiff was required to establish that she did not receive notice of the FDIC's appointment in time to file a claim before the expiration of the Claims Bar Date. (ECF No. 49-7 at p. 2.)

Defendant FDIC contends that Plaintiff's administrative submission "does not demonstrate, or even aver," that she lacked notice of the FDIC's appointment as Receiver in time to file a claim before the Claims Bar Date. (ECF No. 49 at p. 17.) As such, according to Defendant FDIC, Plaintiff failed to satisfy the statutory exception for late-filed claims. (*Id*.) Plaintiff's administrative claim, dated December 27, 2024, acknowledged that "[t]he Claims Bar Date has already passed in this case therefore I must provide proof that I lacked knowledge of the appointment of receiver." (ECF No. 49-10 at p. 1.) Plaintiff then referenced various complaints she filed with the FDIC before its receivership appointment, as well as the underlying action. (ECF No. 49-10 at pp. 1–3.) Plaintiff further explained that on November 14, 2024, counsel for the FDIC contacted her, advised her that Republic First Bank had failed and that the FDIC had been appointed receiver, and that her prior complaint to the FDIC did not satisfy the administrative claims process applicable to the FDIC in its capacity as receiver. (ECF No. 49-10 at pp. 1–2.) Simply put, by her own statements Plaintiff concedes that she knew and acknowledged that her claim was filed after the Claims Bar Date and that she was required to submit evidence to Defendant FDIC showing that she lacked knowledge of the receivership appointment until after the Claims Bar Date had passed.

FIRREA provides that the late-filed claim exception only applies where (1) "the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the Claims Bar Date];" and (2) that fact is established "to the satisfaction of the receiver." 12 U.S.C.

§ 1821(d)(5)(C)(ii). Plaintiff does not present any argument or evidence that indicates that Defendant FDIC failed to consider her submission or otherwise departed from the procedures prescribed by FIRREA with regard to its consideration of her late filed claim. *Walker*, 2009 WL 5216980 at *6-*7 (holding that where the claimant cannot show lack of knowledge of the receivership, the court is divested of subject matter jurisdiction). Nor does Plaintiff present anything to establish that Defendant FDIC incorrectly applied the statutory exception for such late-filed claims.

Instead, Plaintiff submitted her claim with evidence to Defendant FDIC, which it considered. Thereafter, Defendant FDIC disallowed Plaintiff's claim because it was untimely, which it is has sole discretion to determine. (ECF No. 49-9 at p. 2.) Moreover, under FIRREA, "[s]uch disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). Because Plaintiff failed to timely exhaust FIRREA's mandatory administrative claims process, and because Defendant FDIC determined that Plaintiff failed to satisfy the statutory exception for late-filed claims set forth in § 1821(d)(5)(C), § 1821(d)(13)(D) deprives the Court of subject matter jurisdiction over Plaintiff's claims against Defendant FDIC.

Accordingly, Defendant FDIC's motion to dismiss pursuant to Rule 12(b)(1) is **GRANTED**.

### 2.    Supplemental Jurisdiction

Federal courts are courts of limited jurisdiction and, as such, have an independent obligation to address issues of subject matter jurisdiction *sua sponte* and may do so at any stage of the litigation. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). If a federal district court

16

determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). Generally, to establish jurisdiction, a pleading must either present a federal claim or trigger the court's diversity jurisdiction. *See Gibson v. Tip Towing & Recovery LLC*, No. 23-2919, 2024 WL 658977, at *1 (3d Cir. Feb. 16, 2024). However, in certain circumstances, such as here, jurisdiction is conferred by statute.

When a federal court dismisses the claim or party upon which original federal jurisdiction rests, the court is not automatically divested of jurisdiction over the remaining state-law claims. *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1508-11 (3d Cir. 1996). Rather, under 28 U.S.C. § 1367(c)(3), the district court may, in its discretion, "decline to exercise supplemental jurisdiction" once it "has dismissed all claims over which it has original jurisdiction."

In deciding whether to retain supplemental jurisdiction, courts conduct a four-factor analysis that considers: (1) judicial economy; (2) convenience; (3) fairness to the litigants; and (4) comity. *New Rock*, 101 F.3d at 1510-11 (3d Cir. 1996) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966)). No one factor is dispositive; rather, the court must balance all factors in light of the particular factual and procedural circumstances of the case. *Id.*

Ordinarily, where the claims conferring original federal jurisdiction are dismissed before trial, a district court should decline to exercise supplemental jurisdiction unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for retaining the remaining state-law claims. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Conversely, retention may be appropriate where the federal court has already expended substantial judicial resources or resolved the case on its merits. *New Rock*, 101 F.3d at 1508–11.

Here, having dismissed Defendant FDIC, the sole defendant providing this Court with original jurisdiction, the Court must determine whether to retain supplemental jurisdiction over Plaintiff's remaining state-law claims. It will not. The Amended Complaint does not allege any federal cause of action,[12] nor does Plaintiff allege facts sufficient to establish diversity jurisdiction. Accordingly, there is no alternative basis for federal jurisdiction, and the only potential basis upon which the Court may retain jurisdiction is pursuant to 28 U.S.C. § 1367—supplemental jurisdiction. Upon balancing the factors in light of the procedural posture of this case, the Court declines to exercise supplemental jurisdiction and remands the case to the Superior Court of New Jersey.

### i.    Judicial Economy

Judicial economy examines the extent to which the federal court and the parties have already invested time and resources in the litigation. *New Rock*, 101 F.3d at 1510-11. In conducting this inquiry, courts consider the procedural posture of the case, the amount of judicial labor already expended, whether the court has addressed the merits of the underlying claims, whether declining jurisdiction would result in unnecessary duplication of judicial effort, and risk of creating parallel proceedings in state and federal court. *See id; Borough of W. Mifflin*, 45 F.3d at 788. Although judicial economy may favor retaining jurisdiction where a case has progressed through extensive discovery, dispositive motions, or trial, it generally carries less weight when the litigation remains in its early stages. *See id.*

---

[12] The Court notes that the original Complaint alleged claims for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which would have been a basis for federal question jurisdiction. However, the state court dismissed those claims and the Amended Complaint, which is the operative pleading, does not bring those claims.

18

This case has been pending in federal court for several months, the parties have fully briefed numerous motions, and the Court has devoted considerable attention to the case's unique procedural history. The Court has considered various issues, including the propriety of removal, Plaintiff's repeated jurisdictional challenges, and Defendant FDIC's motion to dismiss for lack of subject matter jurisdiction. Consequently, the Court has become familiar with the parties and the procedural posture of this litigation. However, that familiarity alone does not justify retaining jurisdiction.

Rather, those considerations are outweighed by the reality that this Court's investment of judicial resources has been directed almost exclusively toward threshold jurisdictional and procedural issues. The Court has not addressed the merits of any of Plaintiff's state-law causes of action or resolved any of the pending Rule 12(b)(6) motions. Although the Court has necessarily devoted judicial resources to pretrial case management, including discovery-related disputes, those efforts have not materially advanced the litigation on the merits. Thus, this Court has not issued any substantive rulings regarding Plaintiff's claims against the remaining Defendants.

Moreover, the procedural history of this litigation demonstrates that the Superior Court of New Jersey has expended more judicial resources substantively reviewing Plaintiff's claims than this Court. Before Defendant FDIC removed Davis I to this Court, the Superior Court evaluated the sufficiency of Plaintiff's original complaint, dismissed it without prejudice, and granted Plaintiff leave to amend. After Davis I was remanded, the Superior Court reinstated the action, substituted Defendant FDIC as the Receiver for Republic Bank, and accepted the filing of the Amended Complaint. Accordingly, while this Court has necessarily devoted substantial effort to resolving jurisdictional questions unique to Defendant FDIC's participation in the case, the Superior Court has already addressed the substantive sufficiency of Plaintiff's pleadings and is

19

therefore in a better position to (1) review Plaintiff's Amended Complaint for compliance with its original order; (2) analyze the Defendants' various motions to dismiss the Amended Complaint on the merits; and (3) adjudicate the remaining state-law claims through their conclusion. Under these circumstances, judicial economy ultimately favors declining supplemental jurisdiction.

### ii.      Convenience

When evaluating the convenience factor, courts consider the practical burden that retaining or declining jurisdiction will impose on the parties, including whether declining jurisdiction would require the parties to litigate the same facts in multiple forums, requiring duplicative proceedings or unnecessary expense. See *Borough of W. Mifflin*, 45 F.3d at 788; *De Asencio*, 342 F.3d at 312.

Here, convenience favors remand. This litigation originated in the Superior Court of New Jersey and was removed solely because Defendant FDIC exercised its statutory right of removal under FIRREA. Returning the case to the Superior Court now that Defendant FDIC has been dismissed simply restores the remaining parties to the forum in which they were already litigating before removal. Moreover, because the litigation remains at the pleading stage, remand will not require the parties to duplicate extensive discovery, expert proceedings, dispositive merits rulings, or trial preparation. Nor will remand result in parallel proceedings because dismissal of Defendant FDIC eliminates the only basis for original federal jurisdiction. Accordingly, remand imposes no meaningful practical burden on the parties.

### iii.     Fairness to the Litigants

When evaluating fairness, courts consider whether retaining or declining jurisdiction would prejudice either party, including whether remand would create statute-of-limitations

20

concerns, deprive a party of a substantive right, or otherwise result in an inequitable outcome. *See Borough of W. Mifflin*, 45 F.3d at 788; *Artis v. District of Columbia*, 583 U.S. 71, 75-76 (2018).

Here, fairness also favors remand. Plaintiff herself elected to commence this action in the Superior Court of New Jersey and cannot reasonably claim prejudice from returning to that forum. Likewise, the remaining defendants litigated in the Superior Court before Defendant FDIC exercised its statutory right of removal and will simply resume litigating there. Moreover, because the Court is remanding rather than dismissing the remaining claims, Plaintiff will not be required to file a new action or risk forfeiture of her claims. Finally, the Court perceives no evidence of forum manipulation or other circumstance suggesting that remand would confer an unfair tactical advantage on any party. Under these circumstances, remand will not prejudice either side and the fairness factor weighs in favor of declining supplemental jurisdiction.

### iv.    Comity

The final factor, comity, reflects the longstanding principle that federal courts should avoid unnecessarily deciding issues of state law where state courts are equally or better suited to resolve them. Courts consider whether the remaining claims arise solely under state law, whether they present novel or complex issues of state law, and the State's interest in resolving disputes involving its own laws. See *De Asencio*, 342 F.3d at 312; *Borough of W. Mifflin*, 45 F.3d at 787. As the Supreme Court has observed, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

In this case, comity favors remand. Following the dismissal of Defendant FDIC, this action consists exclusively of claims arising under New Jersey law asserted against non-federal, non-

diverse defendants. Prior to removal, the Superior Court had already considered the sufficiency of Plaintiff's original complaint, dismissed that complaint without prejudice, granted Plaintiff leave to amend, reinstated the action upon the filing of the Amended Complaint, and accepted that pleading. Under these circumstances, the New Jersey courts possess a substantial interest in adjudicating Plaintiff's remaining state-law claims and are already familiar with the procedural and substantive background of the litigation.

Moreover, the remaining claims concern alleged breaches of contract, professional negligence, fraud, fiduciary duties, implied contractual obligations, and related issues governed exclusively by New Jersey law. Although these claims do not appear to present particularly novel questions of state law, they nonetheless implicate areas of law in which New Jersey courts possess the primary interpretive authority. Given that no federal question remains, no diversity jurisdiction exists, and the Superior Court has already exercised jurisdiction over this dispute before removal, principles of federalism and comity favor allowing the New Jersey courts to adjudicate Plaintiff's remaining claims.

Accordingly, after weighing the interests of judicial economy, convenience, fairness, and comity, the Court concludes that the balance favors declining supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). This case remains in its early stages, no substantive merits rulings have been issued, all remaining claims arise under New Jersey law, and the litigation originated in and can readily return to the Superior Court without prejudice to any party. Under these circumstances, the Court finds no affirmative justification for retaining supplemental jurisdiction following the dismissal of the sole defendant providing original federal jurisdiction. Therefore, Plaintiff's remaining claims will be remanded to the Superior Court of New Jersey.

### E.  CONCLUSION

For all of the reasons set forth above, Plaintiff's Motions to Vacate Prior Orders and for Supplemental Relief (ECF Nos. 22 & 29) are **DENIED in their entirety.** Defendant FDIC's Motion to Dismiss (ECF No. 49) is **GRANTED** and the case is **REMANDED** to the Superior Court of New Jersey. All other motions (ECF Nos. 27, 44, 45, 46, 47, & 72) are **DENIED AS MOOT** without prejudice to the parties' ability to renew any appropriate applications in the Superior Court following remand. An order reflecting the same accompanies this Opinion.

Dated:  July 24 , 2026

_____
KAREN M. WILLIAMS
United States District Judge

23